UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

TAMMY MOORE, )
 )
    Plaintiff, )
 ) Civil Case No.
v. ) 5:13-cv-88-JMH
 )
CAROLYN W. COLVIN, ACTING ) **MEMORANDUM OPINION**
COMMISSIONER OF SOCIAL ) **AND ORDER**
SECURITY, )
 )
    Defendant. )

\*\*\*

This matter is before the Court upon cross-motions for Summary Judgment [D.E. 12, 14] on Plaintiff's appeal of the Commissioner's denial of her application for disability insurance benefits and Supplemental Security Income (SSI). [Tr. 10-23].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion[2] and grant Defendant's motion.

**I. Overview of the Process and the Instant Matter**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.
[2] Plaintiff filed a Motion to Exceed the Page Limit for her Motion for Summary Judgment, which was granted by this Court. [D.E. 11]. The Court notes that Plaintiff's argument could have been made in compliance with the page limit set forth in General Order 09-13.

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.
>
> 2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.
>
> 3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.
>
> 4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.
>
> 5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the

relevant time period under step one. [Tr. 16]. Under step two, the ALJ found that Plaintiff's medically determinable impairments of obesity, chronic obstructive pulmonary disease with restrictive lung disease, and obstructive sleep apnea were "severe" as defined by the agency's regulations. [Tr. 16]; 20 CFR §§ 404.1520(c), 416.920(c). The ALJ further found that Plaintiff's knee pain, low back pain, and alcohol abuse in remission were "non-severe" impairments. [Tr. 16].

During step three of the analysis, the ALJ considered all of Plaintiff's impairments and decided that none of them met the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1. [Tr. 17]. After further review of the entire record, the ALJ concluded at step four that Plaintiff had a residual functional capacity ("RFC") to perform a limited range of light and sedentary work, but that she was unable to perform her past relevant work. [Tr. 17, 21]. The ALJ further found that Plaintiff required a clean air environment and could not be exposed to respiratory irritants. [Tr. 17]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 23].

In this appeal, Plaintiff argues that the Commissioner's decision is not supported by substantial evidence, that the ALJ gave improper controlling weight to non-examining state agency physicians, and that the ALJ failed to give controlling weight

to Plaintiff's treating physicians. Specifically, Plaintiff argues (1) that the ALJ relied on unfounded inconsistencies in Plaintiff's sworn testimony to make an adverse credibility assessment; (2) the ALJ improperly gave controlling weight to non-examining state agency physicians who failed to review all the relevant medical evidence and disregarded well-documented physical treating sources; and (3) the ALJ failed to provide good reasons for not giving controlling weight to Plaintiff's treating physicians, and, thus, violated the "treating physician rule."

**II. Standard of Review**

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

**III. Factual and Procedural Background**

Plaintiff is currently forty-one years old [Tr. 170] with a high school education. [Tr. 208]. She has past work experience as a punch press operator, warehouse laborer, gas pump attendant, cashier, and forklift operator. [Tr. 198, 209, 236-37]. Plaintiff filed for a period of disability and disability insurance benefits under Title II, and for supplemental security income (SSI) under Title XVI on March 11, 2010, originally alleging disability beginning on November 27, 2007 [Tr. 13], but later amending it to September 1, 2009. [Tr. 33]. The claims were denied both initially and upon reconsideration. [Tr. 13]. Plaintiff requested a hearing with the ALJ, which took place on August 18, 2011. *Id.* The ALJ issued an unfavorable decision denying disability insurance benefits and SSI on November 18, 2011. [Tr. 23].

According to Plaintiff, she has experienced breathing problems her entire life. [Tr. 224]. Plaintiff complains of constant breathing problems, precipitated by any sort of daily activity. [Tr. 225]. Plaintiff currently treats these problems with Prednisone [Tr. 35, 239], home oxygen, a nebulizer treatment, Albuterol, and Combivent or Duoneb. [Tr. 240]. Plaintiff has experienced knee and back pain that began with a

fall in 1987. [Tr. 224]. Plaintiff claims that she treats this pain with over-the-counter medications, if she can afford them, and has crutches and a knee brace if needed. [Tr. 225]. Additionally, Plaintiff continues to smoke a pack of cigarettes a day [Tr. 52], and is married, but had been separated from her husband for four years at the time of the hearing. [Tr. 44].

Plaintiff's treating physician, Dr. Joel Knight, submitted written testimony that Plaintiff suffered from both Gastroesophageal Reflux Disease and COPD, both of which require chronic medical therapy. [Tr. 276]. Plaintiff received a consultative examination in April 2010 from Dr. Jeffery L. Gum. [Tr. 243]. Dr. Gum noted that Plaintiff could walk 10 minutes without having to sit, could stand 5-10 minutes without having to sit, had wheezing throughout her lungs and rhonchi in the right lung field, and a constant cough throughout the examination. [Tr. 244-45]. Based on the examination, Dr. Gum found that Plaintiff had a "mild level of limitations in regards to work-related activities especially in regards to manual labor with activities including lifting, carrying, handling objects." [Tr. 245]. Dr. Gum further found that Plaintiff's breathing problems could be managed with her inhalers and steroids. *Id.* An RFC assessment of Dr. Gum's evaluation was performed by a single decisionmaker (SDM). [Tr. 249-56]. The SDM found that Plaintiff's limitations were only partly supported by the

6

examination performed by Dr. Gum [Tr. 254] and gave little weight to Dr. Gum's opinion as to Plaintiff's condition. [Tr. 255].

Dr. Robert Brown, a state physician, performed an RFC assessment of Plaintiff in September 2010 and found that Plaintiff could return to past relevant work. [Tr. 71]. Dr. Perritt, also a state physician, performed a psychiatric review of Plaintiff and found that there were no mentally medical determinable impairments because the "reported depression is due to physical conditions." [Tr. 68].

A Vocational Expert, Dr. Jackie Rogers, testified that a hypothetical person similarly situated to Plaintiff who could perform light and sedentary work, frequently carrying 10 pounds, could walk six of an eight hour work day, and who could not be exposed to respiratory irritants could not return to work similar to Plaintiff's prior work. [Tr. 54-55]. However, a person in that situation could perform unskilled work. [Tr. 55]. When this hypothetical person was augmented so that they could only stand 10 minutes at a time, walk about 50 feet, and must use a nebulizer eight times a day, there were no jobs that the hypothetical person could perform. [Tr. 55-56].

Plaintiff is still able to prepare meals, perform household chores [Tr. 227], grocery shop, and drive twice a month. [Tr. 46]. She also walks her daughter to school each morning and each

7

afternoon, which is a little less than half a mile. [Tr. 47]. Plaintiff claims that she can perform these daily activities, but experiences labored breathing. [Tr. 45-47].

**IV. Analysis**

   **I. The ALJ's adverse credibility assessment of Plaintiff is supported by substantial evidence.**

Plaintiff first argues that the ALJ misunderstood Plaintiff's testimony at the hearing, and used this misinterpretation to make an adverse credibility assessment of Plaintiff's complaints. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citations omitted). The ALJ noted that, when questioned by the ALJ, Plaintiff stated she required only two nebulizer treatments a day. However, when further questioned by counsel, Plaintiff stated that she had two nebulizer machines, and took eight to twelve treatments a day. [Tr. 19, 41, 51]. If this were the only inconsistency the ALJ relied upon in making her adverse credibility assessment, Plaintiff's argument might have merit. However, the ALJ noted many other inconsistencies in Plaintiff's testimony. [Tr. 19-

8

20]. A few of the inconsistencies noted by the ALJ include, that the claimant testified she separated from her spouse four years ago, [but] the record contains numerous emergency room visits precipitated from fights between the two since that time; [s]he testified that her medications resulted in side effects, [but] the record fails to corroborate her allegations; she can afford cigarettes despite her claims that she cannot afford medications or medical treatment; and that claimant maintains the ability to perform an impressive array of activities of daily living in spite of her alleged impairments including caring for two children, ages nine and fifteen years old as well as performing household chores. [Tr. 19-20]. Thus, the record contains "such relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's adverse credibility determination of Plaintiff. *Cutlip*, 25 F.3d at 286 (citations omitted).

**II. The ALJ did not give improper controlling weight to non-treating physicians.**

The Plaintiff argues that the ALJ gave controlling weight to medical opinions of non-examining state agency physicians and disregarded the medical opinions of Plaintiff's treating physicians. "[A]n opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a nonexamining source), and an opinion from a medical source who regularly treats the claimant

(a treating source) is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a nontreating source)." *Gayheart v. Comm'r of Social Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citations omitted).

Plaintiff specifically contends that "the ALJ improperly appears to give controlling weight to medical opinions rendered by non-examining state agency physicians who never examined Ms. Moore and who failed to review all the relevant medical evidence." [D.E. 12-1 at 2, 18]. The state agency physicians Plaintiff refers to are Dr. Brown and Dr. Perritt. *Id.* However, Plaintiff does not cite to any portion of the ALJ's opinion where the ALJ discussed the September 28, 2010 report issued by Dr. Brown or the September 27, 2010 report issued by Dr. Perritt. [Tr. 68, 71]. Additionally, the Court has found no reference to this report in the ALJ's opinion.

Rather, Plaintiff appears to be arguing that because the ALJ found that Plaintiff could perform light work, as did the state agency physicians, the Court should assume that the ALJ gave controlling weight to those opinions. The record fails to support this assertion. The ALJ went through a detailed review of Plaintiff's past medical tests, her daily activities, and the evidence offered by physicians in coming to the determination that Plaintiff could perform light and sedentary work with

environmental limitations. [Tr. 20-21]. Specifically, the ALJ relied on the following: "the record reflects few emergency room visits for respiratory illness, but numerous visits for other minor impairments; . . . [o]bjective testing also fails to corroborate the claimant's allegations of disabling respiratory impairments; the claimant walks approximately one-half a mile two times a day to take her daughter to and from school; [s]he also retains an impressive array of activities of daily living; . . . [t]he state [sic] of the claimant's treating physician, Dr. Knight, that she requires nebulizer treatments have been considered by the [ALJ] but do not establish the claimant is disabled and do not constitute an opinion she is unable to work." [Tr. 20-21]. There is no evidence that the ALJ relied on the opinions of Dr. Brown or Dr. Perritt, let alone that she gave them controlling weight. Rather, the record shows that the ALJ properly considered the record as a whole in coming to the determination that Plaintiff could perform light work activities.

**III. The ALJ did not improperly weigh the medical opinions of the treating physicians.**

Finally, Plaintiff argues that the ALJ failed to provide good reasons for refusing to give Plaintiff's treating physicians controlling weight. "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the

11

opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in the case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)). When good reasons are not provided for the weight given to a treating physician opinion, the court may remand. *Id.* at 380 (citations omitted).

In this case, the ALJ did not refuse to give controlling weight to Dr. Knight's opinion. Rather, the ALJ found that Dr. Knight did not express an opinion as to Plaintiff's ability to work. [Tr. 21]. The ALJ explicitly stated "that none of the claimant's treating physicians opined she was unable to work." [Tr. 21]. An ALJ cannot refuse to give controlling weight to an opinion that was never given. Plaintiff references an RFC assessment completed by Dr. Knight, claiming that it was completed on January 18, 2011. [D.E. 12-1 at 15]. However, this RFC was not completed until January 26, 2012. [Tr. 603]. That was also the first time Dr. Knight had discussed the length of time it would take Plaintiff to perform the nebulizer treatment. [Tr. 605]. At the time the ALJ issued her opinion, only Plaintiff had commented on the length of time it took to complete a nebulizer treatment. [Tr. 21] ("Although the claimant testified it took approximately thirty to 45 minutes for each

nebulizer treatment, Dr. Knight did not comment on this aspect of the claimant's allegation and there is no support for it contained in the medical evidence of record."). As Dr. Knight submitted the RFC and information on the time it would take to perform a nebulizer treatment well after the ALJ issued her opinion in this matter, this particular information "cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

The ALJ found that all Dr. Knight expressed was that Plaintiff had to perform a nebulizer treatment eight times a day. However, the ALJ found that the entire record and Dr. Knight's own treatment notes failed to support that Plaintiff actually used the nebulizer eight times a day. [Tr. 21]. Furthermore, the ALJ noted that Dr. Knight stated that Plaintiff required the use of home oxygen, but that Dr. Knight's own treatment notes indicated that the home oxygen provided no relief to Plaintiff. [Tr. 21].

Further, Plaintiff relies on a hypothetical question posed to the Vocational Expert Dr. Jackie Rogers. Dr. Rogers testified that if Plaintiff used a nebulizer machine eight times a day and it took forty-five minutes to perform each treatment, there would be no jobs Plaintiff could perform. However, the ALJ explicitly found that there was no evidence in the record to

support that it took Plaintiff forty-five minutes to perform each treatment. [Tr. 21].

"The regulation requires ALJs to look to the record as a *whole* – not just to medical opinions – to decide whether substantial evidence is inconsistent with a treating physician's assessment." *Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 723-24 (6th Cir. 2004) (citations omitted). When looking at the record as a whole, the Court finds that the ALJ complied with the treating physician rule. This is especially true given that none of the treating physicians actually expressed an opinion on Plaintiff's ability to work.

**V. Conclusion**

Accordingly, based on the foregoing, **IT IS ORDERED**:

(1) that Plaintiff's Motion for Summary Judgment [D.E. 12] be, and the same hereby is, **DENIED**;

(2) that Defendant's Motion for Summary Judgment [D.E. 14] be, and the same hereby is, **GRANTED**.

This the 30th day of October, 2013.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge